UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARINE TOWING & SALVAGE
OF S.W. FL., INC.,

    Plaintiff,

v.                                      Case No.:  2:22-cv-00346-SPC-KCD

ONE 66' 2019 SABRE DIRIGO,
known as the M/V TERRY LEAH,
(aka M/V WHIRLAWAY) its
engines, tackle, equipment,
apparel, appurtenances, etc., in
rem; MONTE BIGGS, in personam,
and EYRIE HOLDINGS, LLC, a
Florida Limited Liability Company,

    Defendants.
_____/

## ORDER

This cause comes before the Court for consideration of Defendants', Monty Biggs[1], M/V Whirlaway a/k/a Terry Leah and Eyrie Holdings, LLC's Motion for Summary Judgment (Doc. 74), Plaintiff's response in opposition (Doc. 75), and Defendants' reply. (Doc. 76). For the following reasons, the Motion for Summary Judgment is granted in part and denied in part.

---

[1] In the Second Amended Complaint, Plaintiff spells Defendant Monte Biggs' last name as "Briggs." Counsel for Defendants advises that the proper spelling is Biggs. In this Order, the Court will use the spelling provided by Biggs' counsel.

## BACKGROUND

This is an action for salvage under maritime law. In the operative Second Amended Complaint, Plaintiff Marine Towing & Salvage of S.W. FL, Inc. alleges that it provided rescue services to a vessel in peril, the M/V *Terry Leah*, (aka M/V *Whirlaway*). On April 8, 2022, Randall Pittman, his wife Mary Pittman, and Monty Biggs were onboard the *Terry Leah* traveling southbound on the Gulf side of Estero Island. Mr. Pittman is the chairman of the board of a Michigan hospital and the principal of Eyrie Holdings, LLC, which owns the *Terry Leah*. Biggs, whom the hospital employs, maintains the *Terry Leah* and other hospital-owned vessels as part of his job duties. On the day of the incident, Mr. Pittman was captaining the *Terry Leah* when he hit a shoal, sustaining damage to the vessel's propeller. Pittman asked Biggs—who Pittman claims was serving as his deckhand/mate that day—to contact a company to assist the *Terry Leah*. Biggs contacted Plaintiff, who dispatched Captain Stephen Lilly to the vessel's location. The parties dispute whether the vessel was in peril when Lilly arrived and provided aid. Defendants contend that Plaintiff merely provided towing services, while Plaintiff contends it saved the vehicle from an emergency. Nevertheless, once the ship was docked, Lilly had Biggs—who he believed at the time was the *Terry Leah*'s captain—execute a pure salvage contract for payment under the 1989 International Convention on Salvage and attorney's fees and costs should collection become necessary.

2

(Doc. 10-1). When the contract was executed, Lilly knew that Pittman, not Biggs, was the vessel's owner. (Doc. 75-2 at 152:8–15). Lilly testified that he wanted Pittman, as the owner, to be present when the contract was signed, but Pittman left "pretty quickly" after the boat was docked. (*Id.*) In what appears to be a scrivener's error, the contract names Lilly as the captain/agent of the vessel. The document is signed by Lilly and Biggs. Plaintiff demanded payment under the contract, Defendants refused to pay, and this suit ensued.

In the Second Amended Complaint, Plaintiff brings claims against Biggs, whom Plaintiff alleges to be the captain of the Terry Leah, and Eyrie Holdings for breach of contract for pure salvage and quantum meruit. Plaintiff also sues the vessel in rem to enforce a maritime lien. Defendant Eyrie Holdings has filed a counterclaim for fraudulent inducement and fraud. Defendants now move for partial summary judgment on all claims brought against Biggs and seek judgment on the claims for quantum meruit and maritime lien, which they contend are improper under the law. Plaintiff opposes.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine

dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2018). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

Defendants first seek summary judgment on the claims brought against Defendant Biggs in his personal capacity. Plaintiff sues Biggs personally in Counts I and IV for breach of contract for pure salvage and quantum meruit. Some background on the law of salvage helps clarify the claims against Biggs. The law of salvage generally governs efforts to save vessels in distress. Under this body of law, "rescuers take possession of, but not title to, the distressed vessel and its contents. A court then fashions an appropriate award for the salvors' services." *Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft*, 218 F.3d 1255, 1258 (11th Cir. 2000). A salvor may assert his right to a salvage award either in rem against the salved vessel or cargo or in personam against the owner of the salved property or any other party who

4

may be liable. *Atlantis Marine Towing, Salvage & Servs., Inc. v. Catamaran Co., LLC*, No. 1:19-CV-20107-UU, 2019 WL 13471038, at *3 (S.D. Fla. Apr. 16, 2019). Salvage law distinguishes between pure salvage and contract salvage. In a pure salvage situation, the salvor is a volunteer, and "compensation is dependent on success." *The Elfrida*, 172 U.S. 186, 192 (1898). "The existence of a salvage contract is typically raised as a defense to a pure salvage claim in order to escape the application of the more generous pure salvage award rule." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1115 (9th Cir. 1998). However, where a contract does not contain either an agreement to pay a given sum or to pay without regard to success, the services do not become contract salvage and retain their status as pure salvage services. *Offshore Marine Towing, Inc. v. Gismondi*, 504 F. Supp. 3d 1349, 1356 (S.D. Fla. 2020); *see also The Camanche*, 75 U.S. (8 Wall.) 448, 449 (1869) ("Nothing short of a contract to pay a fixed sum at all events, whether successful or unsuccessful, will bar a meritorious claim for salvage.").

The written contract here provides that the salvor will be entitled to an award only in the event of success on a "no cure-no pay" basis and does not specify a given sum to be awarded. (Doc. 10-1). Thus, it is a contract for pure salvage. Biggs contends that he is not personally liable for breach of the pure salvage contract because he executed it as an agent for the vessel's owner. Under Florida law, "[a]n agent acting within the course and scope of its agency

5

relationship with a disclosed principal is not liable for the debts or obligations of the principal arising from contracts which the agent may negotiate or execute on behalf of such disclosed principal." *Babul v. Golden Fuel, Inc.*, 990 So. 2d 680, 683–84 (Fla. 2d DCA 2008) (citation and quotation omitted). "[I]f the contracting party knows the identity of the principal for whom the agent purports to act, the principal is deemed to be disclosed." *Id.*

Here, there is no dispute that Biggs acted as an agent for the vessel's owner when he executed the contract, and he disclosed this to Lilly. Plaintiff directly alleges this fact in the operative Complaint: "Defendant's, EYRIE HOLDINGS, LLC, agent, Captain BRIGGS, executed a contract for services on behalf of Defendants, the M/V *TERRY LEAH* (aka M/V *WHIRLAWAY*), and EYRIE HOLDINGS, LLC at the time of the casualty and salvage." (Doc. 11 at ¶ 30). There are no allegations in the Complaint that Lilly was unaware of Biggs' status as an agent for a disclosed principal when he executed the document. And, although the written contract itself is ambiguous concerning Biggs' status as an agent, Lilly's testimony reveals that Biggs disclosed his capacity to him before execution.[2] Lilly testified: "[Biggs] told me he was the

---

[2] The contract contains only Biggs' name below his signature and does not indicate whether he was signing in his personal capacity or capacity as an agent. Captain Lilly is (erroneously) designated as the captain/agent for the "Terry Lea" in the body of the contract. (Doc. 10-1; Doc. 75-2 at 156:13-14 ("[D]id I make myself the captain here? I don't know. I probably made a mistake.")). Where there is an ambiguity on the face of a contract as to the capacity of parties and their relationship with one another when they entered into the agreement, the

6

captain, and he also told me that the owner of the boat ran this boat aground. . . . [H]e told me everything. The captain was kind of cool. He gave us the documentation. He was totally cooperative." (Doc. 75-2 at 151:16-21). Plaintiff has presented no evidence to dispute Lilly's knowledge, so summary judgment must be entered on behalf of Biggs on Count I for breach of the written contract.

Instead, Plaintiff argues for the first time on summary judgment that a binding *oral* contract was formed between Biggs and Plaintiff "when the services were requested." (Doc. 75 at 19). This argument is curious, given that, as discussed above, the existence of an oral contract for salvage is typically a defense to a pure salvage claim. *See Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 966 F.2d 602, 606 (11th Cir. 1992) (holding a binding oral engagement to pay for services, whether or not they prove successful, can bar a salvage claim). Nevertheless, the allegations in the operative Complaint make clear that the contract referred to in Count I is the written agreement between Biggs and Plaintiff that memorialized the pure salvage, not a separate oral agreement. (Doc. 11 at ¶ 34 ("[Plaintiff] is entitled to payment based upon maritime law for pure salvage and memorialized in the contract executed by Defendants' agent.")). Plaintiff cannot raise a new claim alleging a separate

---

court may receive parol evidence. *Babul*, 990 So. 2d at 683 ("Unless the contract explicitly excludes the principal as a party, parol evidence is admissible to identify a principal and to subject the principal to liability on a contract made by an agent. The parol-evidence rule does not bar proof that an agent made a contract on behalf of a principal.").

7

oral contract for the first time in its response to Defendants' Motion for Summary Judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Accordingly, judgment for Biggs on Count I is proper.

Biggs also seeks summary judgment on Count IV, Plaintiff's claim for quantum meruit. There are four elements for a quantum meruit claim under Florida law: (1) the plaintiff must have conferred a benefit on the defendant; (2) the defendant must have knowledge of the benefit; (3) the defendant must have accepted or retained the benefit conferred; and (4) the circumstances must be such that "it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.,* 695 So.2d 383, 386 (Fla. 4th DCA 1997) (en banc)). Here, the first element is missing as the claim pertains to Biggs. It is undisputed that Biggs is not the owner of the *Terry Leah*. It is also undisputed that he asked for Plaintiff's assistance on the ship's behalf at the direction of Pittman, who was the captain and is the principal of Eyrie Holdings. Any benefit conferred by Plaintiff by dispatching Captain Lilly to rescue or tow the vessel was conferred directly on the *Terry Leah* and her

owner, not on Biggs. Thus, judgment is due to be entered for Biggs on Count IV.

Defendants also argue that summary judgment must be entered on Count IV because it is improper as a matter of law. In support of this contention, Defendants (briefly) cite case law establishing that a salvage award differs from an award of quantum meruit: rather than provide compensation for work performed, a salvage award is a "bounty historically given in the interests of public policy, to encourage the humanitarian rescue of life and property at sea, and to promote maritime commerce." *Ocean Servs. Towing & Salvage, Inc. v. Brown*, 810 F. Supp. 1258, 1262 (S.D. Fla. 1993). Plaintiff contends that the claim for quantum meruit should be permitted because it is brought in the alternative to its salvage claim. Inconsistent and alternative pleading is permitted under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(d)(2)(3). Plaintiff's salvage claim has not yet been proven. Until it is, the quantum meruit claim is not improper. *See Boat Raising & Reclamation v. Victory*, No. 2:06CV78-FTM29DNF, 2007 WL 4462995, at *1 (M.D. Fla. Dec. 14, 2007) (permitting both salvage claim and quantum meruit claim to proceed to trial); *Key Tow, Inc. v. M/V JUST J'S*, No. 0422310CIV, 2005 WL 3132454, at *13 (S.D. Fla. Nov. 1, 2005) (permitting recovery under the theory of quantum meruit when salvage claim not established). *Fine v. Rockwood*, 895

F. Supp. 306, 311 (S.D. Fla. 1995) (same).  Defendants' Motion is denied to the extent it argues otherwise.

Finally, Defendants seek summary judgment on Count III, Plaintiff's claim against the *Terry Leah* in rem for enforcement of a maritime lien. Defendants argue this claim is also improper because the parties stipulated to a letter of undertaking, which discharges the lien against the vessel. Defendants' argument for summary judgment on this basis is misplaced. Generally, when a proceeding is brought in rem to enforce a maritime lien on a vessel, the district court will issue a warrant of arrest for the vessel.  When security is posted in exchange for the release of a vessel arrested in rem, the security provided becomes a complete substitute for the res or the property seized.  *U.S. v. Ames,* 99 U.S. 35 (1878); *U.S. v. Tito Campanella Societa Di Navigazone,* 214 F.2d 457 (4th Cir. 1954); *U.S. v. Ohio Valley Co., Inc.,* 510 F.2d 1184 (7th Cir. 1975).

Letters of undertaking may similarly secure a claim in rem, even without the formal arrest of the vessel.  *See Petroleos Mexicanos Refinacion*, 554 F.3d at 104; *Maritima Antares, S.A. v. Vessel ESSI Camilla*, 633 F. Supp. 694, 695 (E.D. Va. 1986).  "A traditional letter of undertaking provides that, in consideration of the vessel not being seized and released on bond, the vessel owner will file a claim to the vessel and pay any judgment rendered against the vessel even if the vessel itself is subsequently lost." *Panaconti Shipping*

*Co., S.A. v. M/V Ypapanti*, 865 F.2d 705, 707–08 (5th Cir. 1989).  However, the effect of a letter of undertaking is not to submit the vessel owner to the jurisdiction of the court personally or to any greater extent than that which he stipulates to be liable.  *J.K. Welding Co. v. Gotham Marine Corp.*, 47 F.2d 332, 334 (S.D.N.Y. 1931).  Rather, the lien is merely transferred from the vessel to the letter of undertaking.  *See Industria Nacional Del Papel, CA. v. M/V Albert F*, 730 F.2d 622, 625–26 (11th Cir. 1984).  So, the Court maintains jurisdiction in rem to enforce the letter.  Because the lien has merely transferred to the letter, Defendants' request for summary judgment on Count III is denied.

Accordingly, it is **ORDERED:**

Defendants' Motion for Summary Judgment, (Doc. 74), is **GRANTED IN PART and DENIED IN PART**.

1. Judgment is **GRANTED** for Defendant Monte Biggs and against Plaintiff on Counts I and IV.
2. The remainder of the Motion is **DENIED**.
3. All deadlines in the Third Amended Case Management and Scheduling Order govern.

**DONE** and **ORDERED** in Fort Myers, Florida on July 24, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

11