IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

IN ADMIRALTY

CASE NO.: 2:22-cv-00346-SPC-KCD

**MARINE TOWING & SALVAGE OF S.W. FL., INC.**,

   Plaintiff,

v.

**ONE 66' 2019 SABRE DIRIGO, known as the M/V *TERRY LEAH*, (aka M/V WHIRLAWAY) its engines, tackle, equipment, apparel, appurtenances, etc.,** *in rem;* **and EYRIE HOLDINGS, LLC, a Florida Limited Liability Company**,

   Defendants.
_____/

**JOINT PRETRIAL STATEMENT**

Pursuant to the Court's Scheduling Order [DE65] and Rule 3.06 of the Local Rules of the United States District Court for the Middle District of Florida, Plaintiff, MARINE TOWING & SALVAGE OF S.W. FL., INC., and Defendant, EYRIE HOLDINGS ,LLC, hereby submit their Pretrial Statement as follows:

I. **JURISDICTION**

This case is a maritime claim under Admiralty and Maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rule C. This Court has original jurisdiction through Article III, Section 2, of the United States Constitution.

II. **NATURE OF THE ACTION**

This is an action for salvage under maritime law. Plaintiff alleges that it provided rescue services to a vessel in peril, the *M/V Terry Leah* (aka *M/V Whirlaway*) on or about April 8, 2022 when the vessel hit a shoal and sustained damage. The parties dispute whether the vessel was in peril and the characterization of the services as to towing services or emergency rescue or a vessel in peril.

III. **STATEMENT OF THE CASE**

A. **Plaintiff's Statement of the Case**

The Plaintiff states that it was called by the vessel into Plaintiff's dispatch center and was advised that the 66' motor yacht struck a shoal, lost the use of one engine, anchor was deployed, and caller stated the anchor was dragging, the vessel was in proximity to more shoals and the shoreline. The caller talked in excited voice and made clear they needed help immediately. There were onshore winds and a small craft advisory at issue. Plaintiff

dispatched a captain who was able, on the third attempt, to extract the vessel from its imperiled position.

**Theory of Liability**:

Federal maritime law recognizes maritime salvage, including as sound public policy. For a maritime salvage award only three elements are required: 1. A marine peril. 2. No prior duty of the salvor to render assistance. 3. Success by the salvor. Once entitlement to a salvage award is established See Girard v. M/V Blacksheep 40 F.3d 1351 (11th Cir. 2016), the Court looks to the six factors enunciated in The Blackwall 77 U.S. 1 (1869) in order to calculate an award in favor of the salvors. The caselaw is that salvors should be entitled to a liberal award in order to promote their services to vessels in distress. As to marine peril the peril only has to be "reasonably apprehended".

**Damages Recoverable by the Plaintiff**:

The damages ("amount") recoverable by the Plaintiff are based upon The Blackwall 77 U.S. 1 (1869) six factors. Primary amongst them is the value of the vessel. (Here, in the range of $3.0 million) The Court also looks to the degree of peril to which the vessel was subjected, as well as the other four factors in The Blackwall. The Court also should consider an enhanced recovery due to the Plaintiff being a professional salvor—which the federal

3

courts give an "equitable uplift" to ensure the salvor will remain ready to assist others in the future.

### B. Defendant's Statement of the Case

Defendant's yacht crossed over a sand bar resulting in damage to its propellers. The boat was still maneuverable but exhibited vibration. Defendant decided to anchor and call for a tow.

Defendant's mate called Plaintiff contracting for a tow.

Plaintiff arrived and towed the boat to a boatyard for repairs. Plaintiff never announced that it intended to claim maritime salvage at any time before or during the delivery of services to Defendant, Defendant had other resources to tow the boat and would have used those resources had the Plaintiff announced its intention to claim salvage.

After the boat was towed to a boatyard, the Plaintiff returned in the evening to obtain a signature from the mate on what was described as a delivery receipt. The Plaintiff only displayed a signature line on the electronic device containing the contract. Defendant's mate signed what was described as a delivery receipt. Plaintiff forged the mate's signature on a second signature line.

The first time the Plaintiff disclosed it intended to claim salvage occurred three days after the event when Plaintiff contacted Defendant's mate by telephone.

The Defendant's vessel was securely anchored and was not in marine peril at the time Plaintiff rendered services.

Defendant has asserted a counter claim for fraud in the Inducement and **Fraud – Bad Faith, Overreaching and Vexatious Litigation.**

IV. **EXHIBITS**

A. **Plaintiff's Exhibit List** – see attached Exhibit A

B. **Defendant's Exhibit List** – see attached Exhibit B

V. **WITNESSES**

A. **Plaintiff's Witness List** – see attached Exhibit C

B. **Defendant's Witness List** – see attached Exhibit D

VI. **EXPERT WITNESSES**

A. **Plaintiff's Expert Witnesses**

1. R. Craig Starns

B. **Defendant's Expert Witnesses**

1. Timothy M. Morgan

2. Toby Phillips

## VII. DEPOSITIONS TO BE OFFERED AT TRIAL

(Potentially) Captain Stephen Lilly.

(Potentially) Randall Pittman.

## VIII. ADMITTED FACTS WHICH REQUIRE NO PROOF AT TRIAL

1. The vessel involved is a 66' 2019 SABRE DIRIGO, known as the M/V *TERRY LEAH*, (aka M/V WHIRLAWAY).

2. On April 8, 2022 the vessel occupants called the Plaintiff.

3. On April 8, 2022, Randall Pittman was the operator of the vessel.

4. None of the occupants on the *TERRY LEAH* were members of Boat/U.S.

5. The *TERRY LEAH* while operated by Randall Pittman and ran over a shoal and lost the use of its starboard engine.

6. The Plaintiff was under no prior obligation to render assistance to the vessel or its occupant.

## IX. PRINCIPLES OF LAW WHICH THERE IS AGREEMENT

1. This case is governed by federal maritime law.

2. Applicability of *Girard v. M/V Blacksheep*, 40 F.3d 1351 (11th Cir. 2016) as to *entitlement* to marine salvage awards in the 11th Circuit based on

three elements: 1. Marine Peril, 2. Voluntary Services Rendered, 3 Success in part or in whole.

3. Applicability of *The Blackwall,* 77 US 1 (1869) to calculations of the *amounts* of salvage awards. Six factors enunciated in *The Blackwall* to calculate amount of award.

4. Oral agreements in maritime law are enforceable. *Kossick v. United Fruit Co.*, 365 U.S. 731, 733, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961).

5. When services, "necessaries", are supplied to a vessel, the vessel itself owes the money. The Commercial Instruments and Maritime Liens Act, 46 U.S.C. 31305(5). General Maritime law of the United States: *The Sabine,* 101 U.S. (11 Otto) 384, 25 L.Ed. 982 (1879); *RMS Titanic, Inc. v. Hoover*, 171 F.3d 943 (4th Cir. 1999).

6. The law of salvage is rooted in a public policy to encourage mariners to come to the aid of a ship in distress. See *The Sabine,* 101 U.S. at 384, 25 L.Ed. at 982; *Mason v. Ship Blaireau*, 6 U.S. (2 Cranch) 240, 266, 2 L.Ed. 266 (1804); *Int'l Aircraft Recovery, L.L.C. v. Unidentified, Wrecked & Abandoned Aircraft*, 218 F.3d 1255, 1261 (11th Cir. 2000).

7. *Cape Ann Towing v. M/Y "Universal Lady", No. 07-13237* (11th Cir. 2008) the 11th Circuit noted that the "maritime peril need not be imminent but rather reasonably apprehended" The law of salvage aims to induce "all to render

aid in the face of marine peril," *Legnos,* 498 F.2d at 671 (emphasis added), and to do so "before it is a do-or-die wager with high risks." *Miss. Valley Barge Line Co. v. Indian Towing Co.,* 232 F.2d 750, 755 (5th Cir. 1956)

8. Professional salvors are awarded an enhanced award by federal maritime law to encourage salvors to remain at the ready to assist vessels and persons in distress.

9. *Flagship Marine Servs. v. Belcher Towing Co*., 966 F.2d 602, 606 (11th Cir. 1992). It is well established maritime law that oral contracts for services are binding at the moment they are entered into.

10. *Biscayne Towing & Salvage, Inc. v. Kilo Alfa, Ltd*., 2004 WL 3310573, *7, 2005 A.M.C. 129 (S.D. Fla. 2004); *Higgins Inc. v. The Tri-State*, 99 F.Supp. 694 (S.D.Fla.1951). *See also Rodriquez v. Baglini*, 17 F.2d 921 (9th Cir.1927) If a Salvor overreaches, exaggerates the scope of danger, or otherwise engage of acts of misconduct, this Court has the power to diminish the ultimate salvage award.

11. "If the vessel has the situation under control such that there is no "reasonable apprehension for her safety in the future if left to her own unaided efforts," then there is an absence of peril. *The J.C. Pfluger,* 109 F. 93, 95-96 (N.D. Cal. 1901)*; Neptune Maritime Co. of Monrovia v. Vessel Essi Camilla,* 562 F.

Supp. 14, 25, aff'd 714 F.2d 132 (4th Cir. 1983); *Clifford v. M/V Islander,* 751 F.2d 1, 6 (1st Cir. 1984)*".Fine v. Rockwood,* 895 F. Supp. 306, 309 (S.D. Fla. 1995).

## X. ISSUES OF FACT THAT REMAIN TO BE LITIGATED

1. Whether there was a reasonably apprehended marine peril.

2. Whether services were voluntarily provided by the Plaintiff to the Defendants.

3. Whether the services of the Plaintiff were successful.

4. The value of the vessel.

5. Applying the six Blackwall factors to the services provided by the Plaintiff.

6. Whether the Plaintiff is a professional salvor.

7. Whether the Defendant requested a tow.

8. Whether the signature on the contract was obtained by fraudulent misrepresentations.

8. Whether Captain Lilly forged Monty Biggs' signature.

9. Whether the vessel was in marine peril.

10. The amount of an award when the facts of this case are applied to the Blackwall factors.

11.   Wind and sea conditions on the incident date.

12. Post Loss Value of the subject vessel.

13. Whether the vessel was around or floating free on anchor.

14. Whether the vessel could have extricated its self under its own power.

15. Whether Plaintiff ever disclosed it was considering the services rendered to be salvage at any time before or during the rendering of services and if so when was the first time Plaintiff disclosed to Defendant the services rendered were to be considered salvage?

16. What additional resources the Defendant had available to tow the boat?

17. Whether the vessel was ever aground.

18. How far from shore was the vessel when at anchor?

19. Whether the anchor chain was holding the vessel firm.

20. Whether the vessel was floating free while at anchor

21. Whether the Plaintiff created its own peril.

22. Whether the Plaintiff exaggerated the peril.

23. The proper award for towing the vessel.

24. Whether the efforts of the Plaintiff's captain were successful.

25. Whether there was anything between the vessel and the shore line when the vessel's anchor was dropped.

26. Whether when the anchor was dropped the vessel would have ended up on the shore line if the Plaintiff's vessel was unsuccessful.

27. The proper award for salvaging the vessel.

## XI. ISSUES OF LAW WHICH REMAIN FOR DETERMINATION BY THE COURT

1. Plaintiff's Entitlement to a maritime salvage award under **Girard v. M/V Blacksheep**, 840 F.3d 1351 (11th Cir. 2016)

2. The Amount of award to Plaintiff considering the six factors in **The Blackwall**, 77 U.S. 1 (1869) case.

3. Whether the Defendant contracted for a Tow.

4. Whether the Plaintiff breached the oral contract for a Tow.

5. The nature of the recoverable damages.

6. Whether the Plaintiff fraudulently induced to execute the agreement.

7. Determination of whether the Plaintiff overreached in its description of the peril and services rendered.

8. Whether the Plaintiff failed to confer benefit to the vessel as it rendered services in the absence of a reasonable apprehension of injury or destruction.

9. Whether there is no marine peril where there is not a reasonable apprehension of injury or destruction if the services are not rendered. *Petrano v Vessel Mistress*, 2005 U.S. Dist Lexis 58808( M.D.Fla. 2005).

10. Whether there was a reasonable apprehension of marine peril under the precedent of *Cape Ann Towing v. M/Y "Universal Lady"*, No. 07-13237 (11th Cir. 2008) the 11th Circuit noted that the "maritime peril need not be imminent but rather reasonably apprehended", and under *Girard v. M/V Blacksheep,* 840 F.3d 1351 (11th Cir. 2016).

11.     Whether the Defendants are able to argue against the precedent of *Girard v. M/V Blacksheep,* 840 F.3d 1351 (11th Cir. 2016) alleging that the services of the Plaintiff were not necessary and alleging that the Defendants could have saved the vessel themselves.

12.     The existence of marine peril, voluntary service rendered by the Plaintiff to the Defendants, and success in part or in whole by the Plaintiff.

## XII. DISAGREEMENT AS TO THE APPLICATION OF THE FEDERAL RULES OF EVIDENCE OR THE FEDERAL RULES OF CIVIL PROCEDURE

None at this time.

## XIII. PENDING MOTIONS

Plaintiff's Motion in Limine. (DE 80.)

## XIV. PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

This is not a jury trial.

## XV. PROPOSED CASE SPECIFIC VOIR DIRE

This is not a jury trial.

Date:  August 16, 2024

**Frank D. Butler, Esq.**
FBN:  940585
fdblawfirm@aol.com
**Frank D. Butler, P.A.**
10550 US Highway 19 North
Pinellas Park, FL 33782
Phone: 727-399-2222
Fax: 727-399-2202
Service: courtdocserve@fdblawfirm.com
kallen@fightingforfamilies.com
*Attorneys for Plaintiff*

/**s**/  Frank D. Butler, Esq.
Frank D. Butler, Esquire

Christopher R. Fertig, Esq.
FBN: 218421
Chris.fertig@fertig.com
Darlene M. Lidondici, Esq.
FBN: 516521
dml@fertig.com
FERTIG & GRAMLING
200 S.E. 13th Street
Fort Lauderdale, FL 33316
Phone: 954-763-5020
Fax: 954-763-5412
*Attorneys for Defendant*

/s/      *Christopher R. Fertig*
Christopher R. Fertig, Esquire